UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

JANE STREET HOLDING, LLC,

               Plaintiff,

    - against -

ASPEN AMERICAN INSURANCE COMPANY,

               Defendant.

------------------------------------X

13 Civ. 2291 (RWS)

OPINION

A P P E A R A N C E S:

    Attorneys for the Plaintiff

    KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
    1633 Broadway
    New York, NY 10019
    By:  Burt M. Garson, Esq.
         Robin L. Cohen, Esq.


    Attorneys for the Defendant
    MOUND COTTON WOLLAN & GREENGRASS (NYC)
    One Battery Park Plaza
    9th Floor
    New York, NY 10004
    By:  Wayne R. Glaubinger, Esq.
         Hilary M. Henkind, Esq.

1

**Sweet, D.J.**


Plaintiff Jane Street Holding, LLC ("Plaintiff" or "Jane Street") has moved pursuant to Rule 56 of the Federal Rules for Civil Procedure for partial summary judgment against Defendant Aspen American Insurance Compary ("Defendant" or "Aspen"). Jane Street alleges that Aspen breached its insurance policy obligation to pay up to $2.5 million for flood damage Jane Street incurred to its electric generator. Defendant has cross-moved pursuant to Rule 56(b) of the Federal Rules for Civil Procedure for summary judgment and to dismiss Plaintiff's complaint ("Complaint"). Based upon the facts and conclusions set forth below, Plaintiff's motion for partial summary judgment is denied, and Defendant's motion for summary judgment and dismissal is granted.


## I. **Prior Proceedings**


This action was initiated by the Plaintiff on April 8, 2013 arising out of an insurance policy Jane Street purchased from Aspen and subsequent refusal from Aspen to pay for the loss of Jane Street's generator due to flooding caused by Hurricane Sandy on October 29, 2012. Aspen filed its answer to Jane

Street's complaint on April 26, 2013.

Plaintiff filed the instant motion for partial summary judgment on May 9, 2013. The motion was filed prior to any scheduling conference. No depositions or discovery have been conducted. Aspen cross-moved for summary judgment on May 28, 2013. Oral arguments were held on October 9, 2013, and the matter was marked fully submitted on the same day.

## II.    The Facts

The facts have been set forth in the Plaintiff's Local Civil Rule 56.1 Statement, the Defendant's Counterstatement to Plaintiff's Local Civil Rule 56.1 Statement, the Defendant's Local Civil Rule 56.1 Statement and the Plaintiff's Counterstatement to the Defendant's Local Civil Rule 56.1 Statement. The facts described below are undisputed except as noted.

Jane Street is in the business of quantitative proprietary trading, and conducts global trades with the company's internal assets. The company's office is located on the 33rd floor of One New York Plaza in lower Manhattan.

In July 2011, Jane Street, through its insurance broker, Hallahan, McGuiness & Lory's, Ltd., approached Aspen seeking to place a property and inland marine insurance policy with Aspen. In seeking out insurance, Jane Street filled out and provided an Accord Commercial Insurance Application form dated July 5, 2011 (the "Application Form").

According to Aspen, Jane Street identified the premises for which it sought coverage as "One New York Plaza, 33rd Floor, New York, New York 10004" in the Application Form. The premises for which Jane Street sought coverage was described on the insurance application as "40,000 sq ft office Property, Improv." According to Jane Street, the Application Form listed "One New York Plaza, 33rd Floor, New York, New York 10004" in the field labeled "Street, City, County, State, Zip & 4[sic]." Moreover, Jane Street contends that the Application Form identifies "40,000 sq ft Office Property, Improv" in the field labeled "Part Occupied," and identifies the potential carrier as "One Beacon America Insurance," not Aspen. The Application Form was neither completed nor signed by Jane Street.

The "Property Section" of the Application Form, identified the construction of the building as "50+" stories, but had no number listed in "# of basm'ts." For the section

4

listed as "other occupancies" in the Application Form, Jane Street listed "offices."

Subsequent to its application, Jane Street purchased the Aspen Policy No. IMA8P2711 for the policy period September 2, 2011 to September 2, 2012 (the "2011-2012 Aspen Policy"). The 2011-2012 Aspen Policy provided coverage for: (i) $10 million limit for Electronic Data Processing Equipment ("EDP"); (ii) $15 million limit for the Commercial Out Program ("COP"); and (iii) $15 million limit for Equipment Breakdown ("EB"). Flood damage was covered under all three coverage parts, but was capped at a $2.5 million sublimit.

The three coverage parts covers three different, but partially overlapping areas of damages. The COP Coverage Part states the following:

1. Covered Business Personal Property –

Covered business personal property means "your" business personal property in buildings or structures at a "covered location" or in the open (or in vehicles) on or within 1,000 feet of a "covered location."

(Partenza Aff., Ex. 2, at A023.)

The COP Coverage Part defines "covered location" to

mean "any location or premises where 'you' have buildings, structures, or business personal property covered under this coverage." (Id., at A052.) However, under the 2011-2012 Aspen Policy if a Scheduled Locations Endorsement was added, "the term 'covered location' means a location that is described on the Location Schedule." (Id.) The Policy contains a Scheduled Locations Endorsement and a Location Schedule which lists "One New York Plaza, 33rd Floor, New York, NY 10004" as the "Covered Location" for the COP Coverage Part. (Id., at A048.)

The EDP Coverage Part insures damage to "protection and control systems" which are located "at a premises described on the 'scheduled of coverages.'" (Partenza Aff., Ex. 2, at A023.) Under the EDP Coverage Part, "Protection and control systems" are defined to include an "uninterruptible power supply system, line conditioner, and voltage regulator." (Id., at A022.) It further contains a "schedule of coverages" which lists the described premises as Plaintiff's mailing address: "One New York Plaza, 33rd Floor, New York, NY 10004." (Id., at A013.)

The EB Coverage Part insures damages to covered property that results from an "accident' to "covered equipment" at "covered locations." (Partenza Aff., Ex. 2, at A082.) "Accident" is defined in the Policy to include a "mechanical

breakdown." (Id., at A051.) "Covered equipment" is defined to include "equipment that generates, transmits, or utilizes energy." (Id., at A052.) The Policy states that "Mechanical Breakdown" includes the "malfunction or failure of moving or electronic parts, component failure, faulty installation, or blowout." (Id., at A021.)

According to Plaintiff, the EB Coverage Part provides coverage that is subject to the terms and conditions of the COP Coverage Part. (Partenza Aff., Ex. 2, at A082.) The EB Coverage Part insures damage to covered property which is caused by or results from an "accident" to "covered equipment" at "covered locations." (Id., at A082.) "Covered equipment" is defined to include "equipment . . . that generates, transmits, or utilizes energy." (Id., at A052.) "Accident" is direct physical loss including "a mechanical breakdown", (id., at A051), and the definition for "Mechanical breakdown" is contained in the EDP Coverage Part and includes the "malfunction or failure of moving or electronic parts, component failure, faulty installation, or blowout." (Id., at A021.) "Covered locations" is defined under the COP Coverage Part. According to Defendant, the EB Coverage Part is "subject to the 'terms' and conditions of the Commercial Output Program – Property Coverage Part under the Sections titled Agreement, Definitions, Property Not Covered, What Must

Be Done In Case of Loss, Loss Payment, and Other Conditions."
(Id., at A082.)

After September 2, 2011 but before September 2, 2012,
Jane Street purchased a generator and installed it in the
basement of One Manhattan Plaza. Neither Jane Street nor its
insurance broker advised Aspen that Jane Street had purchased
the generator or that the generator was located in the basement
level of One New York Plaza.

Approximately a year after Jane Street was first
issued the 2011-2012 Aspen Policy, Jane Street and Aspen renewed
the 2011-2012 Aspen Policy with Policy No. IMA8P2712, effective
from September 2, 2012 through September 2, 2013 (the "Policy"
or "Aspen Policy"). The Policy was renewed "as expiring."
Defendant contends that the Policy was renewed on the identical
terms as the 2011-2012 policy.

On October 29, 2012 Hurricane Sandy hit the lower
Manhattan area. As a result of the Sandy's storm surge, the
basement level of One Manhattan Plaza was flooded, and Jane
Street's generator suffered damages. According to Jane Street,
the generator was a total loss.

On or about November 1, 2012, Jane Street provided notice of the loss of the generator to Aspen. According to Aspen, Jane Street provided a "description of loss" as "Equipment under water, flood, due to Hurricane Sandy." (O'Hara Aff., ¶ 5 and Ex. 1.) Aspen's outside adjuster contacted Jane Street on or about November 5, 2012, and was granted access to Jane Street's premises on November 29, 2012. During this inspection of One New York Plaza, Aspen's outside adjuster York Risk Services Group ("York") learned that Jane Street had purchased the generator after the start-date of the 2011-2012 Aspen Policy but before the inception 2012-2013 Policy. Aspen further learned that the 33rd Floor of One New York Plaza is approximately 40,000 square feet.

On November 29, 2012, York sent a letter to Jane Street advising that the generator was located in the basement of One New York Plaza rather than an "insured location." As such, York wrote that coverage was limited to $50,000 under the sublimit for "locations You Elect Not to Describe" in the Policy. (O'Hara Aff., Ex. 2.)

Following York's visit to One New York Plaza, various letters were sent between parties regarding the coverage of Jane Street's generator. On or around January 24, 2013, Aspen sent

Jane Street a letter stating that the undisputed amount owed under the Policy was $50,000 and included a proposed proof of loss. (Garson Decl., Ex. 2.) On or around February 26, 2013, Jane Street's counsel sent Aspen a sworn statement and enclosed a "revised proof of loss for the damage to the Aspen generator, specifically providing that the actual cash value of the claim for damage to Aspen's generator is $2.2 million." (Garson Decl., Ex. 3.) Aspen rejected Jane Street's Proof of Loss via letter on March 4, 2013. (Glaubinger Decl., Ex. 7.)

On or around March 14, 2013, Aspen sent Jane Street a check for $50,000. This is the amount Aspen contends is the limit of coverage under the Aspen Policy for damage to Jane Street's generator. (Garson Decl., Ex. 4.) According to Jane Street, Plaintiff reserved its rights when it accepted the check. To date, Aspen has not paid any additional monies to Jane Street for the generator.

The Complaint alleges three causes of action: (1) breach of contract; (2) breach of fiduciary duty; and (3) bad faith. Plaintiff has moved for partial summary judgment on the breach of contract claim; Defendant has moved for summary judgment and dismissal on all claims.

10

**III.    Plaintiff's Motion For Partial Summary Judgment Is Denied And Defendant's Motion for Summary Judgment And Dismissal Is Granted**

**a. The Applicable Standard**

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). In determining whether a genuine issue of material fact does exist, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

In addition, courts do not try issues of fact on a motion for summary judgment, but rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d

11

202 (1986).

The moving party has the initial burden of showing
that there are no material facts in dispute, Adickes v. S.H.
Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142
(1970), and can discharge this burden by demonstrating that
there is an absence of evidence to support the nonmoving party's
case.  Celotex, 477 U.S. at 325. The nonmoving party then must
come forward with "specific facts showing that there is a
genuine issue for trial," Fed. R. Civ. P. 56(e), as to every
element "essential to that party's case, and on which that party
will bear the burden of proof at trial." Celotex, 477 U.S. at
322. "[T]he non-moving party may not rely simply on conclusory
allegations or speculation to avoid summary judgment, but
instead must offer evidence to show that its version of the
events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102,
109 (2d Cir. 1999) (internal quotations omitted).


   **b.   Defendant's Motion for Summary Judgment on the Contract
         Claim Is Granted And Plaintiff's Motion Is Denied**


   1. The COP Coverage Part Does Not
      Provide Coverage To The Generator


         Under New York law, "a policyholder bears the initial

12

burden of showing that the insurance contract covers the loss."
Roundabout Theatre Co. v Continental Cas. Co., 751 N.Y.S.2d 4, 7
(N.Y. App. Div. 2002). In interpreting an insurance policy:

> The New York approach to the interpretation of
> contracts of insurance is to give effect to the intent
> of the parties as expressed in the clear language of
> the contract. Unambiguous terms are to be given their
> plain and ordinary meaning, and ambiguous language
> should be construed in accordance with the reasonable
> expectations of the insured when he entered into the
> contract.

Southern New Jersey Rail Group, LLC v. Lumbermens Mut.
Cas. Co., No. 06 Civ. 4946(LAK)(AJP), 2007 WL 2296506, at *8
(S.D.N.Y. Aug. 13, 2007) (quoting United States v. Am. Home
Assurance Co., 94 Civ. 7621, 2003 WL 21436219 at *2-3 (S.D.N.Y.
June 19, 2003); see also Cragg v. Allstate Indem. Corp., 17
N.Y.3d 118, 122, 950 N.E.2d 500 (N.Y. 2011) (if there "is any
ambiguity in an exclusionary clause, [courts will] construe the
provision in favor of the insured"). Similarly, in insurance
contracts relating to property, "[i]f the description of the
insured premises is ambiguous, that meaning should be given
which is the most favorable to the insured." Bronxville Props.,
Inc. v. Friedlander Grp., Inc., No. 2001-07276, 2001 WL 34687620
(N.Y. App. Div. Jan. 31, 2002).

13

"Insurance contracts must be interpreted according to common speech . . . ." Id. If an insurance policy's coverage covers a disputed location or object, "exclusions or exceptions from policy coverage . . . are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction . . . . before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." Pioneer Tower Owners Assn. v State Farm Fire & Cas. Co., 12 N.Y.3d 302, 307, 908 N.E.2d 875 (N.Y. 2009) (quoting Seaboard Sur. Co. v Gillette Co., 64 N.Y.2d 304, 311, 476 N.E.2d 272 (N.Y. 1984)).

New York courts have held that if the description of the premises is not restricted to a particular office suite or floor, the policy covers the entire premises at the described location. In Zoha Creations, Ltd. V. Those Certain Underwriters at Lloyd's, 575 N.Y.S.2d 51 (N.Y. App. Div. 1991), the insurance policy at issue insured "Zohar Creations, Ltd., 2-4 West 47th Street, New York, New York 10036." The definition of "premises" was not otherwise restricted in the policy, and the insured only occupied Room 204A of that location. The court held that coverage extended to the insured's property that was stolen

14

while in the hallway outside Room 204A and to "the entire
property described as 204 West 47th Street" since if the insurer
had intended to restrict the definition of "premises", "it was
required to do so in clear and unambiguous language. Id. at 51-
52.

In contrast, insurance contracts that describe a
particular floor or office space limits coverage to that
particular area in a multi-story building. In T&G Knitwear Co.,
Inc. v. Home Ins. Co., 548 N.Y.S.2d 29 (N.Y. App. Div. 1989),
the insured, T&G Knitwear, purchased insurance from insurer
which covered the insured's goods at various locations. One of
the locations added by the insured to the policy was the
premises of one of its contractors, Lynch Knitting Mills, which
occupied the second and third floors of a building in Brooklyn.
Shortly after this location was added to the policy, a fire
damaged the Brooklyn building. As a result, the insured
submitted a claim for fire loss not only at the premises of
Lynch, but also for loss sustained to the insured's property
that was in the possession of a party not on the insurance
policy on the sixth floor of the same building.

The policy in T&G Knitwear insured the "Personal
Property of the Named Insured . . . all while at the location(s)

15

described in the Declarations or within 500 feet thereof if in the open, on land, or in or on land vehicles." The insured contended that, pursuant to this provision, the entire amount of loss at ACD was covered inasmuch as that property on the sixth floor was within 500 feet of the scheduled Lynch premises. The court rejected the argument:

> The additional coverage provided is for property at insured locations "or within 500 feet thereof if in the open, on land, or in or on land vehicles." The property at ACD was not in an insured location and, while it may have been within a radius of 500 feet, it was stored in an enclosed floor in a building, not in the open, or on land, or in a land vehicle. The language of the policy, therefore, is clear and unambiguous and the IAS court properly granted defendant's motion for summary judgment. . . . .

Id. at 30; see also Evergreen Nat. Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669 (Tex. App. 2003) (where the policy provision covered "Your business personal property located in or on the building described in the Declarations or within 100 feet of the described premises" and the premises described in the declarations specified a suite in a shopping complex, the insured's suite, and not the entire complex, was the "described premise" within the meaning of the insurance policy); Streamline Capital, L.L.C. v. Hartford Cas. Ins. Co., No. 02 Civ. 8123(NRB), 2003 WL 22004888, at *7-8 (S.D.N.Y. Aug. 25, 2003)

(finding the phrase "property at the described premises" used in a commercial property policy meant the "plaintiff's own personal property in its office suite" as opposed to property located elsewhere in One World Trade Center); Seneca Ins. Co., Inc. v. Cimran Co., Inc., 963 N.Y.S.2d 182, 185 (N.Y. App. Div. 2013) (where the insured represented on its insurance application that the insured property was a one-story building, the fourth floor, from where a construction worker fell, was not part of the "designated premises" insured by a commercial general liability policy; "[i]f a policy insures a portion of a building, it does not cover an injury occurring in another portion of the building"); Axelrod v. Maryland Cas. Co., 619 N.Y.S.2d 10, 10 (N.Y. App. Div. 1994) (where the demised premises was clearly and unambiguously listed in the policy as being "29 East 19th Street, 4th Floor," an accident that took place on the first floor was not covered).

The COP Coverage Part covers "Covered Business Personal Property" which was "business personal property in buildings or structures at a 'covered location' or in the open (or in vehicles) on or within 1,000 feet of a 'covered location.'" (Partenza Aff., Ex. 2, at A057.) The Aspen Policy specified that the "covered location" that was insured was "One New York Plaza, 33rd Floor, New York NY 10004." Further, the COP

17

Coverage Part defined "covered locations" as "any location or premises where 'you' have . . . business personal property covered under this coverage. However, if the Schedule Locations Endorsement is added to [the Aspen Policy], 'covered location' means a location that is described on the Locations Schedule. (Id., at A052.) The Policy included a "Schedule Location Endorsement" that states: "Coverage provided by the Commercial Output Program coverages applies only to the 'covered locations' described on the Locations Schedule." (Id., at A096-98.) The "Locations Schedule" identified the "Covered Location" as "One New York Plaza, 33rd Floor, New York, NY 10004. (Id., at A048.) Given the inclusion of the Schedule Location Endorsement and Locations Schedule and language therein, the Aspen Policy clearly limited its coverage to the 33rd floor of One New York Plaza.

Plaintiff contends that the Aspen Policy provided coverage for flood damage to Jane Street's downtown location with the inclusion of the "in buildings or structures at a 'covered location'" language, that this language extends COP coverage to the entire building at One New York Plaza, including the basement. (Pl. Br., at 8 (emphasis added).) Plaintiff contends that this is the only viable interpretation of the Policy.

18

Plaintiff's reading would vitiate the inclusion of the 33rd Floor in the Locations Schedule and the language of the Schedule Location Endorsement. The "buildings or structure" language distinguishes property inside the building from property in the open. The phrase "in buildings or structures at a 'covered location' or in the open" clarifies that coverage extends to property (a) that is at a "covered location" within a building or structure; or (b) in the open on or within 1,000 feet of the "covered location." See, e.g., T&G Knitwear Co., 548 N.Y.S.2d at 30; Velvet Ice Cream, Inc. v. Wausau Ins. Cos., 698 F. Supp. 128, 130 (S.D. Ohio 1988) (the phrase "in or on the building or in the open (including within vehicles) on or within 100 feet of the designed premises" unambiguously insures property inside the building or in the open on or within 100 feet of the building). This interpretation of the Policy is the only reading that does not destroy the language of the Schedule Location Endorsement and Locations Schedule.

Reading the Schedule Locations Endorsement and the Locations Schedule as identifying only the 33rd floor as a "covered location" is consistent with Jane Street's application for insurance, which identified the premises information, an entry separate from the applicant's mailing address, as "One New

York Plaza 33rd Floor New York NY 10004." In addition, the application lists "40,000 sq. ft Office Property" as the "Part Occupied" with respect to the premises information, and the 33rd Floor of One New York Plaza is approximate 40,000 square feet. (O'Hara Aff., ¶ 7.) The Policy is thus appropriately read as covering only the 33rd Floor of One York Plaza. As such, the Aspen Policy did not cover Jane Street's generator located in the basement of One New York Plaza, and Plaintiff has failed to its initial burden of showing that its loss took place at a "covered location." Roundabout Theatre Co., 751 N.Y.S.2d at 4.

Plaintiff cites to Japour v. Ed Ryan & Songs Agency, 625 N.Y.S.2d 750 (N.Y. App. Div. 1995), for the proposition that an insurer's interpretation must not only be reasonable, but also be the only fair interpretation. The insurance policy at issue in Japour defined covered property with reference to the building described in the declarations but included "completed additions" Id. at 752. The Court concluded that the detached three-car garage located behind the building described in the declarations was a "completed addition" to the building, and coverage was available for the garage. The difference in policy language thus makes the situation and policy contemplated in Japour not similar to those in the instant action. Importantly, it is difficult to read the "Scheduled Locations Endorsement" as

anything other than a limit of coverage to the 33rd floor.

Jane Street also cites to Park Place Apartments, L.L.C. v. Farmers Mut. Ins. Co., 247 P.3d 236 (Mont. 2010) for the proposition that the "covered location" includes the basement of a building. This case is also sufficiently distinct from the instant action. The insurance agreement in Park Place Apartments defined "Covered Property" as "include[ing] Buildings . . . meaning the buildings and structures at the premises described in the Declarations, including: (1) Completed additions; (2) Fixtures, including outdoor fixtures; (3) Permanently installed: (a) Machinery; and (b) Equipment; (4) Your personal property in apartments, rooms or common areas furnished by you as landlord; . . . ." Id. at 239. The Court concluded that a carport was covered under the agreement partly due to the fact that the carport's value was included in the total value of the apartment building. Significantly, the Court noted that the insured "premises" could not be limited to only the buildings described in the declarations since "coverage very clearly extends beyond the buildings specifically listed in this section," such as for completed additions, machinery, equipment and outdoor fixtures. Id. at 241. However, the court declined to accept the insured's argument that "premises" was defined to be "as per [the] location address" in the policy. Id. at 241.

21

Given the terms and language in the Aspen Policy,
Aspen installed the generator in a "location" [the insured
elects] not to describe," (O'Hara Aff., Ex. 2.), and not at a
"covered location." Thus, COP coverage does not extend to the
generator and coverage is limited to the $50,000 sublimit
previously paid by Aspen to Jane Street.

2. The EB Coverage Part Does Not Provide
   Coverage To Jane Street's Generator

As previously noted, the EB Coverage Part provides
that Aspen covers "direct physical loss to covered property
caused by or resulting from an 'accident' to 'covered equipment'
at 'covered locations'." (Partenza Aff., Ex. 2, at A082.) The EB
Coverage Part "is also subject to the 'terms' and conditions in
the Commercial Output Program – Property Coverage Part under the
sections titled . . . Definitions . . . ." Accordingly, the
"Covered Location" and "Scheduled Locations Endorsement" terms
from the COP Coverage Part applies to the EB Coverage Part.

The EB Coverage Part goes on to state: "[t]he term
covered property as used in this coverage part means the types
of property described under the Property Covered section of the

22

Commercial Output Program - Property Coverage Part as well as the covered property described in the Supplemental and Supplemental Marine Coverages." (Id.) Given that, as noted above, the COP Coverage Part does not cover Jane Street's generator located in the basement of One New York Plaza and the "Covered Location" and "Scheduled Locations Endorsement" terms of the Policy limits coverage of the COP Coverage Part to the 33rd floor, the EB Coverage Part similarly does not cover the generator.[1]

3. The EDP Coverage Part Does Not Cover The Generator

The EDP Coverage Part extends coverage to protection and control systems located at Jane Street's "premises" described in the "schedule of coverages." (Partenza Aff., Ex. 2, at A023.) The "schedule of coverages" attached to the EDP Coverage Part states that the "described premises" is "One New York Plaza, 33rd Floor, New York, NY 10004." (Id., at A013.)

---

[1] Under the COP and EB Coverage Parts, "Accident" means "direct physical loss [from, but not limited to] a. mechanical breakdown; . . . ." (Id., at A051.) The only definition of "mechanical breakdown" in the Aspen Policy is in the EDP Coverage Part, and it defines the term as "the malfunction or failure of moving or electronic parts, component failure, faulty installation, or blowout." (Id., at A021.) Aspen argues that a mechanical breakdown did not occur, since a "mechanical breakdown must be the cause of loss, rather than an effect of loss." (Def. Op., at 16 n.5.) Given that none of the cases cited by Defendant is an opinion from a New York court or a court in this jurisdiction and the EB Coverage Part does not extend to the generator because of the reasons noted above, analysis of what is a "mechanical breakdown" in the Policy is not required at this time.

Given the clear unequivocal language in the Aspen Policy, the EDP Coverage Part only covers protection and control systems located on the 33rd floor, and coverage does not extend to Jane Street's generator located in the basement of One New York Plaza.

Given the reasoning above, the COP, EDP and EB Coverage Parts do not extend insurance coverage under the Aspen Policy to Jane Street's damaged generator in the basement of One New York Plaza. Plaintiff's motion for summary judgment on these issues is denied, and Defendant's motion is granted.

### c.    Defendant's Motion For Summary Judgment On The Breach of Fiduciary Duty Claim Is Granted

The Complaint has made an additional claim for breach of fiduciary duty due to Aspen's refusal to compensate Jane Street for the loss of its generator. (Compl. ¶¶ 42-49.) Plaintiff has requested for punitive damages as well as attorneys' fees for this claim. (Id. ¶ (b).)

Generally, "[a]n insurance contract does not give rise to a special relationship of trust or confidences unless special circumstances exist that might give rise to a fiduciary

24

relationship." Trustees of Princeton University v. National Union Fire Ins. Co. of Pittsburgh, Pa., 839 N.Y.S.2d 437 (Table) (N.Y. Sup. Ct. 2007) (citing Bates v. Prudential Ins. Co. of America, 724 N.Y.S.2d 3 (N.Y. App. Div. 2001). However, "under the right circumstances, the relationship between insurer and insured may be imbued with elements of trust and confidence which render the relationship more than a mere arm's-length association." Dornberger v. Metropolitan Life Ins. Co., 961 F. Supp. 506, 546 (S.D.N.Y. 1997) (analyzing Estate of Wheaton, Meagher v. Metropolitan Life Ins. Co., 463 N.Y.S.2d 727 (N.Y. Sup. Ct. 1983)).

Unlike the situations in Dornberger and Meagher, Plaintiff has not pled any elements of trust or confidence in its relationship with Aspen that showed a more than arm's-length association. That the Policy insures "protection and control systems," including "uninterruptible power supply systems," does not place Aspen into a position of special trust and fiduciary responsibility. Indeed, the fact that Jane Street did not report the purchase and installation of the generator into the basement of One New York Plaza to Aspen prior to the renewal of the 2011-2012 Aspen Policy belies any such relationship of trust or confidence. Thus, despite the Dornberger Court's dicta that "New York courts do not follow a per se rule prohibiting the

recognition of a fiduciary relationship in the insurance context - rather, New York courts will permit a jury to assess the circumstances of the relationship to determine if it is one of trust and confidence," 961 F. Supp. 506, 546-47 (S.D.N.Y. 1997), Plaintiff has not pled any allegations that suggests such a relationship existed between Aspen and Jane Street that would justify dismissal of Defendant's motion for summary judgment on this claim.

Given the reasoning above, Defendant's motion for summary judgment regarding Plaintiff's claim for breach of fiduciary duty is granted and the claim is dismissed.

### d. Defendant's Motion For Summary Judgment On The Bad Faith Claim Is Granted

Plaintiff has also made a claim for bad faith based on Aspen's denial of Jane Street's insurance claim. (Compl. ¶¶ 50-54.) As with the breach of fiduciary duty claim, Plaintiff has requested for punitive damages as well as attorneys' fees for this claim. (Id. ¶ (c).)

"As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such

26

that 'a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims.'" Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York, 10 N.Y.3d 187, 194, 886 N.E.2d 127 (N.Y. 2008); (citing N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 318, 662 N.E.2d 763 (N.Y. 1995)). However, "an insurer is not liable in excess of the policy limits for the breach of an insurance contract absent bad faith." In re AXIS Reinsurance Co. REFCO Related Ins. Litig., No. 07-CV-07924-JSR, 2010 WL 1375712, at *5 (S.D.N.Y. Mar. 7, 2010) (quoting STV Group, Inc. v. American Continental Properties, Inc., 650 N.Y.S.2d 204 (N.Y. App. Div. 1996)). With regards to paying punitive damages and attorneys' fees, "bad faith is the applicable standard by which to determine whether an insurer will be made to pay for damages in excess of its policy limits. Absent the requisite showing of bad faith, an insurer's monetary exposure is restricted to the policy limits." Id. at *7.

Plaintiff's claim for bad faith rests solely on Aspen's refusal to pay for the loss of the generator under the Policy. (Compl. ¶ 51.) "When the alleged breach of the implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from the breach of the insurance contract, those claims are redundant." Trustees of Princeton

27

Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 839 N.Y.S.2d 437 (Table) (N.Y. Sup. Ct. 2007). Moreover, where an insurer's interpretation of an insurance policy is not unreasonable no bad faith can be found. Id. Mere difference of opinion between an insurer and an insured over the availability of coverage does not constitute bad faith; to show bad faith the insured must demonstrate that "no reasonable carrier would, under the given facts" deny coverage. Sukup v State of New York, 19 N.Y.2d 519, 522, 227 N.E.2d 842 (N.Y. 1967); see also Bartlett v. Nationwide Mut. Fire Ins. Co., No. 12-CV-435-A., 2013 WL 623497, at *3 (W.D.N.Y. Feb. 19, 2013) ("New York law does recognize a cause of action for an insurer's extra-contractual bad faith upon well-pleaded allegations that: (1) the insurer denied coverage as a result of 'gross negligence'; and (2) the insurer lacked even an 'arguable' basis for denying coverage under the standards of a reasonable insurer.") (citing Sukup, 19 N.Y.2d at 281).

Plaintiff has not shown sufficient evidence or sufficiently pled allegations to support an inference of bad faith. Plaintiff made mere conclusory allegations that Defendant denied coverage in bad faith, but bad faith cannot be found "where the insurance carrier has an arguable case for denying coverage." Estee Lauder Inc. v. OneBeacon Ins. Group, LLC, 2012

28

NY Slip Op 30474(U) (N.Y. Sup. Ct. 2012) (quoting Dawn Frosted Meats v Ins. Co. of N. Am., 470 N.Y.S.2d 624 (N.Y. App. Div.), aff'd 62 N.Y.2d 895 (1984)). Plaintiff and Defendant had a legitimate dispute as to the interpretation of the Aspen Policy. Aspen also promptly conducted its investigation into the damage at One New York Plaza and paid the sum owed to Plaintiff as per the undisputed portion of the Policy. This conduct by Defendant does not rise to the level of bad faith.

Jane Street cites to Bi-Economy Market and Panasia Estates, Inc. v Hudson Ins. Co., 10 N.Y.3d 200, 886 N.E.2d 135 (N.Y. 2008), contending that New York law recognizes a claim for consequential damages for the breach of the covenant of good faith and fair dealing in an insurance contract. (Pl. Reply, at 13.) Jane Street claims consequential damages solely for the cost in bringing the instant action. (Compl. ¶¶ (b); (c).) "[C]onsequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." Panasia Estates, 10 N.Y.3d at 203 (internal quotations omitted); Bi-Economy Market, 10 N.Y.3d at 193-94 (noting that consequential damages are "designed to compensate a party for reasonably foreseeable

damages, must be proximately caused by the breach and must be proven by the party seeking them").

Plaintiff has not pled that they suffered any damages as a consequence of the alleged bad faith refusal to pay their claim other than the costs associated with bringing a legal action to enforce their claim. Plaintiff's claim is predicated on damages to a generator that Plaintiff bought after it entered into the initial 2011-2012 Aspen Policy, and Plaintiff did not notify Defendant about the purchase or installation of the generator until after the loss of the generator. Any consequential damages that arose as a result of the loss of the generator and Aspen's refusal to pay for the entire loss were not contemplated by both parties at the time of the execution of the 2011-2012 Aspen Policy or the Policy. Thus, the cases cited by Plaintiff are inapposite to the instant action. See Bi-Economy Market, 10 N.Y.3d at 195 (noting that the purpose of an insurance contract is not just to receive money but also to receive it promptly after calamitous event and that the insurer breached this implicit portion of the policy as a result of its delay to evaluate and pay for the loss); Panasia Estates, 10 N.Y.3d at 203 (denying motion to dismiss because more fact issues existed regarding whether the parties contemplated the damages sought by Plaintiff at the time or prior to

contracting); <u>Estee Lauder Inc.</u>, No. 602379-05, slip. op. (N.Y. Sup. Ct. Feb. 23, 2012) (upholding a claim of bad faith against an insurer's successor-in-interest where an Appellate Division ruling required the insurer to pay the insured's defense costs).

Given the reasoning above, Defendant's motion for summary judgment regarding Plaintiff's claim for bad faith is granted and the claim is dismissed.

## IV.    <u>Conclusion</u>

Based on the reasoning above, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment and dismissal is granted.

It is so ordered.

New York, NY
~~January      , 2014~~
December 31, 2013

_____
**ROBERT W. SWEET**
**U.S.D.J.**